959 F.2d 237
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roy H. WARREN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 91-5514.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1992.
 
 Before KEITH and SILER, Circuit Judges, and BERTELSMAN, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff-appellant, Roy H. Warren ("Warren"), appeals from the denial of his claim for social security retirement benefits by the Secretary of Health and Human Services (the "Secretary") pursuant to 42 U.S.C. §§ 414(a)(1), 417(a) and 20 C.F.R. § 404.1342(c). The district court dismissed his complaint, which sought review of the Secretary's decision holding that the Secretary's findings are based on substantial evidence in the record. For the reasons stated below, we AFFIRM the district court's dismissal.
 
 I.
 
 2
 Warren served active military duty with the United States Navy during World War II from September 6, 1943, to May 1, 1946. He returned to civilian life and was employed in various positions following the war. In 1951, he began working in a civilian capacity with the United States Air Force and continued to do so until 1971. At that time, Warren was terminated from employment at the United States Air Force Base in Warner Robins, Georgia because of an injury to his back which had occurred on the job.
 
 
 3
 On June 1, 1971, an application seeking disability compensation was filed on behalf of Warren with the Office of Federal Employees Compensation of the Department of Labor ("Department of Labor" or "Department"). The disposition of this application turned solely on his civilian service with the Air Force. Because of a delay in the dispensation of the disability payments by the Department of Labor, Air Force personnel "improperly arranged" for Warren to begin receiving retirement payments from the United States Civil Service Commission ("Civil Service Commission" or "Commission"). The facts indicate that the Air Force personnel acted independently, and Warren had nothing to do with this retirement claim. The Commission was required to take into account Warren's wartime service on this claim for retirement benefits.
 
 
 4
 Warren received payments from the Civil Service Commission until September 26, 1972, when the Department of Labor finally approved Warren's claim for disability benefits. The Department of Labor sent Warren $6115.44 as compensation for temporary total disability, and began monthly payments. The Department of Labor also reimbursed the Civil Service Commission for payments in the sum of $6,385.00. This reimbursement was made upon the request of the Commission for payments made to Warren because of the Department's delay in approving his application for disability benefits.
 
 
 5
 The Department of Labor continued to pay these benefits until March of 1980, when the Department determined that Warren could not establish that his prior injury continued to result in disability for work or loss of capacity. At this point, Warren apparently applied to the Civil Service Retirement System for retirement income to begin as of March 28, 1980, and these retirement benefits began. These retirement benefits again took due account of his World War II active duty.
 
 
 6
 The Department of Labor later reinstated his disability compensation benefits and again reimbursed the Civil Service Retirement System for their payments to Warren in the sum of $12,951.33. Warren continues to receive these disability compensation payments, and is eligible to receive the Civil Service retirement benefits if his disability payments ever cease.
 
 
 7
 Warren filed an application for Social Security Retirement Insurance Benefits on October 8, 1986. The Secretary's grant or denial of his application turned on whether Warren may receive credit for his time spent on active military duty during World War II. If so, Warren would be entitled to Social Security Retirement Insurance benefits. If Warren is not entitled to use the employment credit for his World War II military service, he has not accrued the requisite time of employment to receive these insurance benefits.
 
 
 8
 The Secretary denied Warren's application both upon initial application and after an evidentiary hearing. The Secretary concluded that Warren was not entitled to credit for his wartime military service since this credit had been used in obtaining his Civil Service retirement income. The credit, however, is still available for that use. The district court dismissed Warren's complaint challenging the Secretary's determination finding "that the decision of the Secretary [was] supported by substantial evidence and that there [was] no legal error." This timely appeal followed.
 
 II.
 
 9
 A claimant must attain the age of 62 and have fully insured status in order to qualify for Social Security Retirement Insurance Benefits under 42 U.S.C. § 402(a). Fully insured status is established if an individual has credit for the necessary quarters of coverage granted for work covered under the Social Security Act. 42 U.S.C. § 414. Warren was born in January 1925 and needs thirty-six (36) quarters of coverage to meet the statutory definition. Warren has established twenty-eight (28) quarters of credit, and if his active military service during World War II is credited, he will meet the statutory definition.
 
 A.
 
 10
 Congress intended that veterans of World War II be given credit for earning wages during each month of their active military or naval service. 42 U.S.C. § 417(a) provides in pertinent part:
 
 
 11
 (1) For purposes of determining entitlement to and the amount of any monthly benefit for any month after August 1950, ... payable under this subchapter on the basis of the wages and self-employment income of any World War II veteran, ... such veteran shall be deemed to have been paid wages (in addition to the wages, if any, actually paid to him) of $160 in each month during any part of which he served in the active military or naval service of the United States during World War II. This section shall not be applicable in the case of any monthly benefit or lump-sum death payment if--
 
 
 12
 .............................................................
 
 
 13
 ...................
 
 
 14
 * * *
 
 
 15
 (B) a benefit ... which is based, in whole or in part, upon the active military or naval service of such veteran during World War II is determined by any agency or wholly owned instrumentality of the United States (other than The Veterans' Administration) to be payable by it under any other law of the United States or under a system established by such agency or instrumentality....
 
 
 16
 The Secretary must ascertain whether some other United States instrumentality has determined that a benefit is payable by it. 42 U.S.C. § 417(a)(2). The Secretary will review an application without regard to this provision only if she has no notice after inquiry that such a benefit is payable. Id. However, if the Secretary receives notice from some other agency that "such a benefit is payable by it", the Secretary must then "certify no further benefits for payment or shall re-compute the amount of any further benefits payable ..." Id.
 
 
 17
 The Secretary has promulgated and administered the following regulation, interpreting this statutory scheme:
 
 
 18
 You do not get wage credits for the World War II period if another Federal benefit (other than one payable by the Veterans' Administration) is determined by a Federal agency or an instrumentality owned entirely by the United States to be payable to you, even though the Federal benefit is not actually paid or is paid and then terminated, based in part on your active service during the World War II period....
 
 
 19
 20 C.F.R. § 404.1342(c) (1988). The regulations make it clear that the benefits must stop or be recalculated upon notification that "a Federal benefit is payable" to the claimant based upon that service. 20 C.F.R. § 404.1361(a), (b).
 
 
 20
 Warren argues on appeal that the regulations established by the Department of Health and Human Services interpreting the federal wage credit statute "are invalid because they do not implement the unambiguous language of the statute that they purport to administer."
 
 
 21
 We review the Secretary's decision to deny benefits to determine whether it is supported by substantial evidence, and "and the court shall review only the question of conformity with such regulations and the validity of such regulations." 42 U.S.C. § 405(g). See also Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir.1986). We accord deference to an agency's interpretation of a statute that it is charged with administering if that interpretation is reasonable. See generally, Chevron, U.S.A., Inc., v. Natural Resources Defense Council, 467 U.S. 837 (1984).
 
 B.
 
 22
 The Secretary's finding that Warren is not eligible for the war wage credits is certainly supported by substantial evidence. Warren falls squarely within the regulatory language that the Secretary has promulgated. He has received Federal benefits based upon his military service during World War II from the Civil Service Commission on two occasions. Whether he prompted the payment of these benefits is not relevant on the face of the statute or the regulation. Moreover, Warren remains eligible to receive Civil Service Retirement Benefits upon termination of his disability benefits. Accordingly, the Secretary's findings are affirmed based upon the substantial evidence.
 
 C.
 
 23
 On appeal, Warren principally argues that the wage credit regulatory scheme promulgated by the Secretary is invalid because it does not implement the intention of Congress. Warran challenges the regulation because it precludes him from applying the war wage credit to the federal benefit of his choice. He argues that the legislative history behind the statute clearly indicates that Congress intended that veterans have this choice. Warren also contends that it is significant that he did not apply for the benefits, and merely received them as a result of independent government action. Warren contends that the application of the wage credit exception to him in these circumstances contravenes the intentions of Congress and limits his use of the war wage credit unfairly.
 
 
 24
 The plain language of the war wage credit statutory scheme prevents a claimant from receiving benefits from two federal programs by using the World War II active duty time.[1] On its face, the regulation implements this clear intention of Congress. The touchstone of both the statute and regulation is whether a federal benefit has been deemed "payable" by another federal agency or instrumentality. Neither the statute on its face nor the regulation requires actual payment of the benefit. Additionally, the statute and regulation do not inquire as to who applied for the benefit. It is, therefore, irrelevant that Warren did not set into motion the instrumentality that led to his receipt of benefits. Finally, the statute and the regulation do not preclude the claimant from receiving the declared alternative benefit. For example, Warren may still claim against his Civil Service retirement annuity. Accordingly, we conclude that the war wage credit statutory and regulatory schemes utilized by the Secretary are congruous, and reject Warren's challenge to the regulatory scheme.
 
 III.
 
 25
 For the foregoing reasons, we AFFIRM the ruling of the Honorable Jerome Turner, United States District Judge for the Western District of Tennessee.
 
 
 
 *
 The Honorable William O. Bertelsman, Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 It is also plausible that Congress made a statutory choice that as between the Social Security retirement insurance fund and some other Federal agency fund, a claimant must collect benefits from the latter